IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEIGH WARING : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 19-5472 |
| ARAMARK MANAGEMENT, LLC : | |
| : | |

**MEMORANDUM**

**SURRICK, J.**                                                                     **MARCH 24, 2020**

Presently before the Court is Defendant's Motion to Partially Dismiss Plaintiff's First Amended Complaint. (ECF No. 7.) For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff seeks redress against Defendant for sex-based employment discrimination. On December 28, 2013, Plaintiff began employment with Defendant, assuming the position of Talent Acquisition Manager of Business Dining. (Am. Compl. ¶¶ 11-12, ECF No. 6.) On October 31, 2014, as a result of her excellent work performance, Defendant promoted her to Talent Acquisition Corporate Manager and gave her a raise. (*Id*. ¶ 12.) On May 6, 2017, as a result of Plaintiff's continued excellent performance, Defendant promoted her again, to Global Diversity and Inclusion Director. In connection with that promotion, Defendant offered Plaintiff an annual salary of $92,452, plus a 22% bonus opportunity. (*Id*. ¶ 13.) However, Plaintiff's male predecessor in this role, Jameel Rush ("Rush"), started the position at an annual salary of $106,000, plus a 22% bonus opportunity. In addition, during his tenure in that role, his salary increased. (*Id*.) Because of this apparent pay discrepancy, Plaintiff requested an annual salary

for the new role of $95,000, plus the 22% bonus opportunity. Defendant rejected this proposal. Because Plaintiff did not want to jeopardize her career, she accepted the promotion at the rate offered by Defendant. (*Id.* ¶ 14.)

During 2017, Plaintiff excelled in her new role and received various awards and glowing performance reviews. However, despite her success, she was not awarded a full 22% bonus and her annual salary increase was only 1.5%. (*Id.* ¶ 15.) Disappointed, she submitted a request for a formal salary review to Ash Hanson ("Hanson"), Defendant's Vice President for Diversity and Inclusion and Plaintiff's direct supervisor. In connection with her request, Plaintiff showed Hanson market data indicating that similarly situated diversity and inclusion directors earned an average annual salary of $150,000 to $160,000. Hanson advised Plaintiff that she would consider Plaintiff's concerns. (*Id.* ¶ 16.) About three months later, on March 12, 2018, Hanson informed Plaintiff that her salary would be increased to $105,000. The raise was not retroactive for the three months during which Plaintiff's request was pending. (*Id.* ¶ 17.)

Upset by what she perceived as discriminatory pay practices, Plaintiff submitted a letter of resignation on August 15, 2018. Upon receipt of the letter, Jeanell Hughes ("Hughes"), Chief Diversity Officer, and Lynn McKee ("McKee"), Executive Vice President of Human Resources, offered Plaintiff a promotion to Director of Global Talent Development, which came with a salary of $126,000 per year, plus a 22% bonus opportunity. Plaintiff accepted the position. (*Id.* ¶ 18.) In October 2018, Plaintiff began reporting directly to McKee. McKee advised Plaintiff that in addition to carrying out the responsibilities of her new role, she would have to resume management of the diversity and inclusion program. These additional responsibilities significantly increased Plaintiff's workload without any additional compensation. (*Id.* ¶ 19.)

Plaintiff sought clarification from human resources regarding the scope of her new role.

Human resources, however, had no information regarding her promotion and advised her to comply with McKee's instructions. (*Id*. ¶ 20.) Plaintiff did as she was told, but she was upset that despite her dual role, (1) she was only being compensated $20,000 more than Rush was when he began as Global Diversity and Inclusion Director, and (2) her salary was far less than the average salary for her type of position, according to market data. (*Id*. ¶ 21.) Plaintiff alleges that between February 1 and February 13, 2019, "as a result of the intolerable working conditions caused by the Defendant … and the Defendant's discriminatory pay practices, [Plaintiff's] employment was constructively terminated." (*Id*. ¶¶ 11 & 22.)[1] On February 28, 2019, during a meeting with Erin Duclos ("Duclos"), Vice President, Talent Acquisition, Plaintiff learned that Defendant replaced her with Rush. (*Id*. ¶ 23.) By the time Rush took over Plaintiff's position, however, the position had been reclassified as a vice president-level role, such that Rush's annual salary was between $150,000 and $160,000, plus a 27% bonus opportunity. In other words, Rush was being paid a base salary of $25,000 to $35,000 more than Plaintiff had been paid for "substantially identical job responsibilities." (*Id*. ¶ 24.) During a February 28, 2019 exit interview, Hanson said to Plaintiff, "this must feel icky to you." (*Id*. ¶ 25.)

On February 10, 2020, Plaintiff filed an Amended Complaint. (ECF No. 6.) The Amended Complaint contains three counts: sex discrimination and retaliation, in violation of Title VII, 42 U.S.C. § 2000(e) *et seq.* (Count One); sex discrimination and retaliation, in violation of the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 *et seq.* ("PHRA") (Count Two); and violation of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA") (Count Three). (*Id*.) On February 24, 2020, Defendant filed the instant Motion to Partially Dismiss counts one and two

---

[1] Plaintiff does not elaborate on what she means by "constructively terminated."

3

of the Amended Complaint, asserting that pursuant to Rule 12(b)(6), Plaintiff has failed to plead facts sufficient to state a claim under Title VII or the PHRA. (ECF No. 7.)[2] Plaintiff filed a response to the Motion on March 16, 2020. (ECF No. 10.)

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

### B. Plaintiff States a Plausible Claim for Sex Discrimination under Title VII and the PHRA [3]

To state a claim for sex discrimination, a plaintiff must allege that: "(1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse

---

[2]   Defendant does not seek dismissal of Plaintiff's EPA claim.

[3]   The analysis of Plaintiff's claims under Title VII and the PHRA "is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (internal quotation and citation omitted). Accordingly, we address the issues before us by claims, i.e., sex discrimination and retaliation, rather than by count, i.e., Title VII and the PHRA.

employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination in that similarly situated male employees were treated more favorably." *Brown-Baumbach v. B&B Automotive, Inc.*, 437 F. App'x 129, 134 (3d Cir. 2011) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). There is no dispute at this stage that Plaintiff is a member of a protected class and that she was qualified for the position(s) in question. Defendant, however, asserts that Plaintiff has failed to plead the third and fourth elements of her discrimination claim. We address each in turn.

An adverse employment action for purposes of Title VII is "'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). Defendant contends that Plaintiff's only theory of adverse employment action is constructive discharge, i.e., that Defendant "'knowingly permitted' intolerable [working] conditions such that a reasonable person would feel compelled to resign." *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998) (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1082 (3d Cir. 1992)). Defendant also contends that Plaintiff has not adequately pleaded constructive discharge. As indicated above, *see supra* n.1., we, too, are concerned that Plaintiff's constructive discharge allegation lacks factual support. However, giving Plaintiff the benefit of all reasonable inferences in the Amended Complaint, we disagree with Defendant's assertion that constructive discharge is Plaintiff's only theory of adverse employment action. The reasonable inferences to be drawn from Plaintiff's allegations also indicate that she felt that she was being underpaid. (*See* Am. Compl. ¶¶ 13-14, 16-17, 19-22.) Because "paying an individual a lower salary for discriminatory reasons can be an adverse employment action," *see Sherrod v. Philadelphia Gas*

5

*Works*, 57 F. App'x 68, 73 (3d Cir. 2003), Plaintiff has plausibly pleaded an adverse employment action.

With regard to the fourth element, Defendant argues that Plaintiff has failed to establish a causal relationship between any alleged adverse employment action and her sex. We again disagree. The requirements for setting forth a sex discrimination claim are "flexible," and "an inference of discrimination may be developed 'in a number of ways, including, but not limited to, comparator evidence.'" *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 268 (E.D. Pa. 2015) (internal quotations and citations omitted) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010)), *aff'd*, 658 F. App'x 52 (3d Cir. 2016). This flexibility is especially appropriate at the pleadings stage. *Cf. Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 541 (E.D. Pa. 2016) (recognizing that an employment discrimination claimant "need not convince the court of any of these elements at the motion to dismiss stage, but must submit more than 'the naked assertion'" that she suffered an adverse employment action because of her membership in a protected class (quoting *Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014))).

Plaintiff alleges at least twice that her male counterpart, Rush, was paid more than she was for the same or substantially the same work. (*See* Am. Compl. ¶¶ 13, 24-25.) On a 12(b)(6) motion, these comparator allegations are sufficient to establish an inference of discrimination. We will permit Plaintiff's sex discrimination claim to proceed.[4]

---

[4] Since we have determined that Plaintiff's sex discrimination claims are plausible under at least one theory, we need not address whether the claims are plausible on the other grounds asserted by Plaintiff, i.e., constructive discharge. *See State Farm Fire & Cas. Co. v. PECO Energy Co.*, No. 19-3288, 2020 WL 757857, at *3 (E.D. Pa. Feb. 13, 2020); *see also L.A. v. Hoffman*, 144 F. Supp. 3d 649, 672 n.13 (D.N.J. 2015) (declining to address additional basis for plaintiff's claim when court had already determined that plaintiff stated a plausible claim).

## C. Plaintiff Fails to State a Plausible Claim for Retaliation

"To state a claim under Title VII for retaliation, plaintiff must allege that: (1) he engaged in activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Darby*, 216 F. Supp. 3d at 543 (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)). We address each element.

With regard to the first element, "[p]rotected activity under Title VII includes opposition to unlawful discrimination." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008). To constitute protected activity, the "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Id.*; *see also Barber v. CSX Dist. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (holding that plaintiff's "letter, which stated that the plaintiff felt that the position was given to a less qualified person, was too vague to constitute opposition to an unlawful employment practice of his employer because it neither 'explicitly or implicitly' alleged that a protected characteristic was the basis for the adverse employment action").

Plaintiff alleges that she was retaliated against "for opposing discrimination in the workplace." (Am. Compl. ¶¶ 27, 31.) The Amended Complaint, however, gives no factual support to this claim. Plaintiff alleges that she complained to Hanson about her pay and sought clarification from human resources about her role as Director of Global Talent Development (*see id*. ¶¶ 16, 20), but she does not allege that when she engaged in these communications, she advised Hanson or human resources of what she perceived as an illegal employment practice,

7

such as a sex-based wage disparity. To the contrary, she alleges that when she complained to Hanson, she presented Hanson with market data indicating that other diversity and inclusion directors—presumably at other companies—were being paid more than she was being paid. Such a complaint does not implicate unlawful discrimination. Plaintiff's complaints are, at most, "general complaint[s] of unfair treatment" that are "insufficient to establish protected activity under Title VII." *See Curay-Cramer*, 450 F.3d at 135. Accordingly, we find that Plaintiff has failed to plead a protected activity.

Turning to the second element, "[i]n a claim of retaliation, the standard required to show an 'adverse employment action' differs from the standard used for claims of discrimination." *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008) (citing *Moore*, 461 F.3d at 341). In the context of a retaliation claim, "an 'adverse action' is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *White*, 548 U.S. at 64); *see also Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 701 (W.D. Pa. 2014) (citing *White*, 548 U.S. at 61) (recognizing that "Title VII's retaliation provision is broader than its discrimination provision, and is not limited to employment-related or workplace actions"), *aff''d*, 664 F. App'x 170 (3d Cir. 2016).

Since we have concluded that Plaintiff's allegations of discriminatory pay are sufficient under the narrower definition of adverse action related to discrimination claims, we feel

constrained to find Plaintiff's allegations of adverse action sufficient for purposes of her retaliation claim as well. Moreover, and regardless of our earlier determination, we find that the prospect of lower pay would dissuade a reasonable employee from complaining about her employer's discriminatory practices.

We next address causation. Because we have concluded that Plaintiff has failed to allege a protected activity, it would arguably be illogical to attempt to ascertain a causal connection between Plaintiff's "participation in [a] protected activity and the adverse employment action." *See Darby*, 216 F. Supp. 3d at 543. However, even assuming that Plaintiff's complaints to Defendant constituted protected activity, we are not satisfied with Plaintiff's allegations of causation as they relate to her retaliation claim. While there is no one right way to plead causation in Title VII cases, a plaintiff must, at the very least, plead facts "rais[ing] the inference that 'her protected activity was the likely reason for the adverse action.'" *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)). In many cases, plaintiffs raise this inference by pointing to a close temporal proximity between the protected activity and the adverse employment action, or by showing a "'pattern of antagonism' following the protected conduct." *See id*. (quoting *Robinson v. SEPTA*, 982 F.2d 892, 895 (3d Cir. 1993)). Plaintiffs may also rely on "'comments by the employer which intimate a retaliatory mindset'" or "disparate disciplinary treatment between similarly situated employees." *Ortiz v. Fed. Bureau of Prisons*, 290 F. Supp. 3d 96, 107 (D. Mass. 2017) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991)).

Here, the Amended Complaint fails to allege any pattern of antagonism, comments by Defendant, or disparate disciplinary treatment indicative of a causal relationship between

9

Plaintiff's complaints and the adverse employment actions against her. As to temporal proximity, Plaintiff was critical of her salary before she began complaining to Defendant, and she does not allege that her working conditions deteriorated after she began voicing her concerns. Accordingly, temporal proximity does not appear to be an appropriate theory of causation. Finally, although we concluded that the allegedly disparate treatment between Plaintiff and Rush gave rise to an inference of discrimination, our determination on that point was limited to Plaintiff's traditional discrimination claim. In other words, while the allegedly disparate compensation might suggest that Defendant discriminated against Plaintiff on the basis of sex, it does not, standing alone, suggest that Defendant retaliated against Plaintiff because she complained about her pay.

Because Plaintiff has failed to allege a protected activity and causation, her retaliation claims will be dismissed. However, we will give Plaintiff one additional opportunity to amend these claims. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (noting that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted in part and denied in part. An appropriate order follows.

**BY THE COURT:**

**/s/ R. Barclay Surrick**
**R. BARCLAY SURRICK, J.**